# NEW YORK SUPERIOR COURT.

ZACHARY PECK, assignee, &c., respondent agt. ELIZA J. BROWN, appellant.

An action given under the Revised Statutes respecting the *determination of claims to land* (2 *R. S.* 313, § 3) is, under the Code, subject to the *same rules* as all other actions; and the *same defences* to defeat the right to such relief may be set up by the defendant, and also equitable relief by way of *counter claim.*

Where the plaintiff brought his action as *trustee of an express trust* (for the benefit of creditors) against the defendant, and the relief demanded in his complaint, in addition to that given under the statute respecting the determination of claims to real property, was that the plaintiff's title *might be quieted* and adjudged free and clear from *any right claimed by the defendant,* and other relief.

And the defendant claimed said premises under a *full covenant deed, given and executed to her by her husband,* several years before the plaintiff's alleged title accrued, for a good and valuable consideration, and in performance of an agreement to that effect, with intent to *settle the same upon her as her separate estate,* and to vest in her an absolute estate therein, in fee simple.

*Held,* on demurrer, to the answer, that the *voidness at law* of a deed directly from a husband to his wife, does not interfere with *equitable rights* which may grow out of such an instrument.

Neither does the act of of 1849, which gives a married woman the power of a *feme sole* in certain cases, from which gifts by her husband are simply excluded, prevent the right of the husband to make, or his wife to receive from him, *provision for her support.* And a court of equity does not contravene this statute in the exercise of its equity powers to protect the interest of the wife as a *cestui que trust,* or perhaps a *ward in chancery.*

Although the equity of the wife growing out of the facts, may be considered a *trust,* it is not as such prohibited by the Revised Statutes respecting uses and trusts, because not enumerated therein, for the reason that it is a trust arising by *implication of law,* to which this statute does not apply.

In this case it is alleged and admitted by the demurrer that the conveyance was made to the defendant in pursuance of a previous agreement for both a good and valuable consideration, and that it was a suitable one, having regard to the property of the husband; equity will therefore sustain such a settlement, even if the plaintiff was a creditor or could claim a creditor's rights.

The defence that the trustee, after the purposes of his trust have been accomplished, retains no interest in the land conveyed to him, to enable him to litigate the claims of others, amounts to a denial of title in the plaintiff, and is a sufficient defence.

*Heard General Term, Dec.,* 1863 ; *decided Feb'y* 13, 1864. *Before* ROBERTSON and GARVIN, *Justices.*

THIS is an appeal from an order sustaining a demurrer to the second, third and fourth defences of the answer.

The complaint alleges, that on the 22d of October, 1855, William H. Brown, owning four lots in Twelfth street, New York, conveyed the same in fee to plaintiff in trust; that he has always since been, and is now, the owner of the same in fee and in possession; that defendant claims title in fee to a part of the premises; and plaintiff prays his title may be adjudged free from defendant's claim, &c.

The answer, besides a general denial, sets up three separate defences, to which plaintiff demurs. They are as follows:

1. Defendant alleges (as her second defence), that William H. Brown was her husband; that on the 11th day of July, 1849, he owned the premises now claimed by her; that he was then possessed of great wealth and of property in value far beyond the amount of his debts and liabilities;

that before and after this time, she released her dower in large tracts of real estate mortgaged and conveyed by him; that, thereupon, "in performance of an agreement with her said husband to that effect, and in consideration of love and affection towards her, and of good and sufficient other meritorious, valuable and pecuniary considerations, &c., for the purpose of applying the same to her separate use," on the 11th of July, 1849, (being six years before the alleged trust conveyance to the plaintiff), her husband had conveyed the premises in question, with others, to her in fee by deed, " with full covenants of warranty and further assurance;" that this deed was at once recorded on her behalf, and she " immediately entered into possession" of all the property so conveyed, and " had and enjoyed to her sole separate use all the rents and profits thereof at all times since, (being upwards of six years,) until after the death of her husband, intestate, October 27, 1855," (such death being five days after the alleged conveyance to plaintiff); that the settlement of this property to her separate use " was no more than a reasonable provision for her by her husband, in view of his pecuniary circumstances, and was so meant and intended in good faith by him;" and that by reason of these matters, she is sole owner of the premises in question claimed by her.

2. Defendant alleges (as her third defence), that the plaintiff's alleged conveyance is a general assignment of the property of W. H. Brown, made for the benefit of creditors existing at its date, (Oct. 22, 1855); that all the claims of such creditors arose long after his deed of conveyance to defendant; that the assignment to plaintiff does not purport to convey the premises in question; that it did, however, convey to plaintiff a large amount of other property sufficient to pay all the creditors of W. H. Brown without selling any of the property mentioned in the complaint; that plaintiff has already sold and converted into money the greater part of the assigned property; that he

now has in his hands more than sufficient money arising therefrom to satisfy all the debts of W. H. Brown; that, moreover, the greater part of the debts subsisting at the time of the assignment are barred by the statute of limitations; that W. H. Brown died five days after the assignment; that defendant was in the following month appointed his administratrix; that no property of his estate has yet come to her possession; that the trusts of plaintiff in the premises described in the complaint have been executed, and his alleged title to the lands in question has ceased; that said lands (except as conveyed to defendant) have descended to Arthur J. and William H. A. Brown, sons and the heirs at law of said W. H. Brown; and that the plaintiff prosecutes this action without their consent, and has no right of action in the premises.

3. Defendant (as her fourth defence), by way of counter claim, reiterates the allegations so set forth in the second and third defences, and besides alleges that W. H. Brown, having in July, 1849, conveyed to her specifically by deed, with full covenants, the premises she now claims, (for good and valuable considerations), with intent to settle the same upon her as her separate estate, and to vest in her an absolute estate therein, in fee simple, as before mentioned, afterwards, in October, 1855, he made a general assignment to plaintiff, in trust, of "all his lands, tenements;" that lately the plaintiff sets up a claim under this assignment to the premises so conveyed to her by deed, and claims to exercise acts of ownership over the premises, and to exclude defendant therefrom, and to sell and convey and transfer a valid title thereto, and give possession, &c., in derogation of defendant's deed and title, and the equitable rights and claims of defendant; and defendant prays, by way of equitable counterclaim, that through the equitable powers of this court, it may be decreed that W. H. Brown by his deed intended to convey said premises to and settle the same upon her, and she is thereby vested with a free-

hold estate therein against any claim of plaintiff under the assignment aforesaid, &c.

To these three defences the plaintiff interposed a general demurrer, that they "do not constitute a defence."

MATHEWS & SWAN, *attorneys, and*
ALBERT MATHEWS, *counsel for appellant.*

I. The plaintiff having instituted an "action" by "summons and complaint," to compel the determination of defendant's claims to the lands in question, she has a right to set up her defences, whether legal or equitable, either in avoidance, or by way of counterclaim, the same as in any other action.

1. The "special proceeding" authorized by the Revised Statutes on the subject of "the determination of claims to real property" (in order to enforce the rights thereby created), is so far modified by the Code of Procedure that, in every "action" "by which a party prosecutes another party for the enforcement or protection of a right" which is given by the provisions of this statute, the pleadings on both sides must be subject to the same rules as govern in all other actions. (2 *R. S. p.* 312, § 1; *Code,* § 2, 449–468, § 69, 140–149; *Hammond* agt. *Tillotson,* 18 *Barb.* 332; *Mann* agt. *Provost,* 3 *Abbott,* 446; *The Mayor, &c.* agt. *Stuyvesant,* 1 *N. Y. R., per* JOHNSON, *J., p.* 44.)

2. Whether, therefore, the plaintiff's complaint is regarded as a legal action to enforce or protect his alleged right as created by the Revised Statutes, or an equitable action to remove the defendant's deed as a cloud upon his title; in either case the "defendant may set forth by answer as many defences and counterclaims as she may have, (connected with the subject of the action), whether they be such as have been heretofore denominated legal or equitable, or both. (*Code,* § 150; *Crary* agt. *Goodman,* 12 *N. Y,* 2 *Kern.* 266; *Phillips* agt. *Gorham,* 17 *N. Y.* 3 *Smith,* 270.)

II. In the construction of the language employed by the defendant in her answer in the "statement of new matter, constituting her defence or counter-claim," the court will (on this demurrer) indulge in no presumption against her claim; but, on the contrary, will make the most liberal inferences to sustain the defences and counter-claim intended to be set forth. (*Foot* agt. *Sprague*, 12 *How. Pr. R.* 355.)

1. The plaintiff's demurrer is general, and therefore, even under the strict rule of the common law, would not have reached many defects of a pleading, which would have vitiated it if pointed out by special demurrer. Under this rule, for instance, a plea faulty for argumentativeness or duplicity was good on general demurrer. (*Spencer* agt. *Southwick*, 9 *Johns. R.* 314; *Wolf* agt. *Luyster*, 1 *Hall S. C. R.* 146.)

2. The strict rule of the common law, requiring allegations to be taken most strongly against the pleader, is abolished by the Code. (§ 140.)

3. The mode of pleading formerly existing at law and in equity is also abolished by the Code; and parties are now not permitted to state in the pleadings either the fictions formerly contained in pleadings at law, or the matters of evidence formerly contained in bills of discovery, &c. in equity. The parties must state only the facts constituting the cause of action or defence, according to their legal effect or operation, and not in their details. (*Code*, §§ 140, 142, 149; *Boyce* agt. *Brown*, 7 *Barb. Rep. p.* 80; *Pattison* agt. *Taylor*, 1 *Code Rep. N. S. p.* 175; *Dollner* agt. *Gibson*, 3 *Code R. p.* 153; *Williams* agt. *Hayes*, 5 *How. P. Rep. p.* 470; *The People, &c.* agt. *Ryder*, 2 *Kern. Rep. pp.* 439 *and* 441.)

4. The rules of construing pleadings, as defined by the Code, require that their "allegations shall be liberally construed, with a view to substantial justice between the parties;" and that "the court shall disregard any error or

defect therein which shall not affect the substantial rights of the adverse party." (*Code,* §§ 159, 176.)

5. The plaintiff's demurer, therefore, reaches no defect in the answer (if any there be), unless it is made to appear that conceding all the facts therein stated to be true, they do not, "under any view of them," "constitute any defence or counter-claim whatever," or the "elementary constituents" of a defence or counter-claim. (*Richards* agt. *Edick,* 17 *Barb. Rep.* 260; *Graham* agt. *Camman,* 5 *Duer Rep.* 697; *The People, &c.* agt. *The Mayor, &c.* 8 *Abbott Rep.* 19; *Butterworth* agt. *O'Brien,* 24 *How. Pr. Rep.* 440.)

III. The "third defence" does "upon its face constitute a defence" to plaintiff's action, because it shows the plaintiff is not "the real party in interest" in respect to the cause of action alleged in the complaint. (*Code,* § 111, 144; *Palmer, assignee,* agt. *Smedley,* 28 *Barb. Rep.* 468.)

1. Assuming the facts stated in the complaint to be true, yet as (by reason of the allegations in the third defence) the plaintiff's trust in respect to the lands in question has been fully performed, he is now *functus officio,* and all his interest in the lands in question has ceased, and the legal title thereto has descended to the heirs at law of W. H. Brown, deceased. (1 *Rev. Stat. p.* 730, § 67; *Parks* agt. *Parks,* 9 *Paige Rep.* 107; *Bellinger* agt. *Shaffer,* 2 *Sand. V. C. Rep.* 293.)

2. Upon the same assumption, if, by reason of the plaintiff's having taken the lands upon trust to sell them for the benefit of the creditors of W. H. Brown, deceased, they are to be treated in equity as converted into personalty, and distributable as such, then they pass to the defendant, as the administratrix of W. H. Brown, deceased, and the plaintiff has no title. (2 *Story's Equity Jurisprudence,* § 1212; *Bunce* agt. *Vandergrift,* 8 *Paige Rep.* 37; *Stagg's Ex'rs* agt. *Jackson,* 1 *Comst. Rep.* 206.)

3. To enable the plaintiff to maintain this action, he

must prove the essential allegation in his complaint that he is "lawfully seized and possessed of the premises in question as owner in fee." The "third defence" distinctly puts this fact in issue, by alleging the plaintiff's title to have ceased, and the lands to have vested in other persons.

1st. An answer of title to property (whether real or personal), in a third person, (without even connecting the defendant therewith) is always a good defence where the plaintiff's cause of action is founded upon his own title. (*Harrison* agt. *McIntosh*, 1 *Johns. Rep.* 384; *Bloom* agt. *Burdick*, 1 *Hill Rep.* 130.)

2d. Thus even a tenant, notwithstanding the stringent rule which prevents a tenant from denying his landlord's title may show such title to have ceased. (*Evertson* agt. *Sawyer*, 2 *Wend. Rep.* 512; *Nellis* agt. *Lathrop*, 22 *Wend. Rep.* 121; *Despard* agt. *Walbridge*, 15 *N. Y. Rep.* 374.)

4. This defence is both substantial and meritorious.

1st. The plaintiff has not a scintilla of interest in the controversy he has provoked.

2d. A judgment in this action will be wholly nugatory as respects the real parties in interest, whether in favor of plaintiff or defendant. The defendant will not be estopped from claiming against the heirs at law, in whom the fee of the lands has vested. The heirs at law will not be estopped from claiming against the defendant.

3d. The plaintiff does not represent the heirs either in law or in fact. The court will not presume they will adopt a judgment, if in his favor, however beneficial to themselves. A court of equity can hardly be so false to humanity as to presume that the heirs at law would be guilty of the monstrous filial ingratitude of seeking to deprive their mother of a settlement made upon her by their father in his lifetime, upon abundant legal, equitable, valuable and meritorious considerations, which was followed by six years' quiet possession and enjoyment by

her, and never disturbed or intended to be disturbed by the grantor.

IV. The "second defence" is a complete answer to the complaint. The facts therein stated establish an equitable title to the lands in question in the defendant. It is the duty of a court of equity to give it full effect, and recognize its validity.

1. The facts set forth in the defence fully entitle the defendant to invoke successfully the equitable powers of this court to establish her claim to the premises in question.

1st. There is no creditor or representative of creditors claiming as such adversely to the defendant, or seeking to impeach or invalidate her right and title.

2d. There is no heir at law or devisee claiming against her.

3d. There is no pretence that any wrong or injustice to creditors, or heirs at law, or devisees, is liable to be affected by the recognition and confirmation of her title as owner in fee of the premises.

4th. The plaintiff claims as naked trustee against the prior acts of his own grantor, done and accepted in good faith upwards of six years prior to the conveyance to himself as trustee.

5th. The settlement of the lands in question upon the defendant by her husband was reasonable and proper under the circumstances.

6th. It was meant and intended to be a perfect conveyance to vest in the wife a full title in fee to the lands in question.

7th. There is no suggestion or suspicion of fraud, bad faith, or undue influence. The conveyance was the result of a fair agreement between husband and wife, and the "pecuniary consideration" averred may be held to be a contribution from her separate estate. (*Code*, § 159.)

8th. It was founded upon the best possible considerations

to sustain any act of any individual concerning property. (*Strong* agt. *Garlick*, 3 *Paige Rep.* 452 ; *Shepard* agt. *Shepard*, 7 *Johns. Chan. Rep. p.* 62.)

9th. It was evidenced by the most solemn formalities known to·the law. The conveyance is a deed under seal, and contains full covenants of warranty and further assurance, and was recorded according to statute.

10th. The conveyance was followed by an immediate and continued change of possession, and a separate enjoyment of all the rents, profits and benefits during all the continuance of the lifetime of the husband and grantor, being a space of upwards of six years.

11th. There was never any attempt of the husband and grantor to disturb this separate title, possession and enjoyment, or in any manner to interfere with his wife's exclusive right thereto.·

12th. The defendant's husband has long since died *intestate*. If, therefore, the plaintiff is permitted to recover, he robs the widow of her portion, and desecrates the grave of her deceased husband, by making him now the involuntary party to a fraud and outrage upon the helpless surviving parent of his children.

II. The well-settled rules governing courts of equity, for upwards of a hundred years, in determining the rights of married women in their dealings concerning property with their husbands, also entitle the defendant to invoke successfully the equitable powers of this court to establish and confirm her title to the premises in question. (*A. D.* 1734, TALBOT, *Chancellor, Slanning* agt. *Stiles*, 3 *Peere Wms. Rep.* 335 ; *A. D.* 1738, HARDWICKE, *Chancellor, Lucas* agt. *Lucas*, 1 *Atkins' Rep.* 270 ; *A. D.* 1823, KENT, *Chancellor, Shepard* agt. *Shepard*, 7 *Johns. Chancery Rep.* 57.)

1. The rule of the common law, which treats a conveyance from husband to wife as void, is solely a technical result from the necessity of two parties to a contract,

while at common law husband and wife are one person. (1 *Blackstone Comm. p.* 442.)

2. This notion of the union and identity of husband and wife does not prevail in courts of equity, so as to incapacitate a wife from claiming as a *feme sole*, adversely to her husband, when necessary to subserve the ends of justice. In such tribunals she may sometimes appear against her husband either as a party to a suit, or as a witness, or as a party to an agreement, (whether executory or executed), or as a creditor, or even as a voluntary grantee or donee. (2 *Story's Equity Jurisp.* § 1368, 72, 73, 74, 75.)

3. The rights of married women form a favored head of equity jurisdiction; and courts of equity are sedulous to protect them in their dealings concerning property, and the provisions made by their husbands for their support in case of survivorship. (2 *Story's Equity Jurisp.* § 1429.)

4. A husband's conveyance of lands mediately to his wife, although for a nominal consideration, when made by the momentary intervention of a disinterested third person as a mere conduit of the title, is good even at common law. Nor is such a conveyance vitiated by expressing upon the face of the husband's deed such ultimate intent of the grantor. There is therefore neither reason or principle involved in the common law rule, that a deed immediately from husband to wife is void. (*Lynch* agt. *Livingston*, 6 *N. Y.* 2 *Seld. Rep.* 422.)

5. The intervention of a trustee is no longer deemed essential to sustain the wife's equitable rights under an agreement or conveyance from a husband to his wife. (2 *Eq. Jurisp.* § 1380; *Wallingford* agt. *Allen*, 10 *Peters' U. S. C. Rep.* 583.)

6. If it be deemed necessary to assume a constructive or "implied trust" in the husband, in order to give effect to his contract or grant in her favor, still such trusts are valid, and saved by exception from the sweeping opera-

tion of the Revised Statutes. (1 *Rev. Stat. p.* 728, § 50 ; *Johnson* agt. *Fleet*, 14 *Wend. Rep.* 179.)

7. An *ante-nuptial* agreement is not necessary to sustain in equity a contract or grant made by the husband in favor of his wife. On the contrary, where one exists, a court of equity will grant relief to a wife against its terms, in order to sustain a post-nuptial conveyance, where the ends of justice require it. (*Shepard* agt. *Shepard*, 7 *Johns. Ch'y R.* 57.)

8. A court of equity in like manner recognizes the relationship of debtor and creditor between husband and wife, (irrespective of any ante-nuptual contract or trustee), in order to find a consideration to uphold contracts between them. The wife may also in equity recover her debt out of his estate after his death. (2 *Story Eq. Jurisp.* § 1373 ; *Slanning* agt. *Style*, 3 *Peere Wms. Rep.* 338 ; *Gardner* agt. *Gardner*, 22 *Wend. Rep.* 526 ; *Devin* agt. *Devin*, 17 *How. Pr. R.* 514.)

9. The separate property of a wife, in respect to which a court of equity will regard her as a *feme sole*, may also be acquired directly from her husband as a gift, and wholly created after coverture, without any consideration whatever. (*Slanning* agt. *Styles*, 3 *Peere Wms. R.* 338 ; *Calmady* agt. *Calmady*, *Ibid.* 339 ; *Ryder* agt. *Hulse*, 24 *N. Y. Rep.* 379.)

10. Release of dower is a meritorious consideration to sustain a contract between husband and wife. (*Strong* agt. *Garlick*, 3 *Paige Rep.* 452.)

11. Courts of equity will surely, therefore, sustain and give effect to a conveyance of property or deed of land from a husband directly to his wife, (against his heirs at law or assignee), as a reasonable settlement for her, where the quantum thereof is suitably proportioned to his estate, and the consideration is meritorious, and no claims of creditors intervene, and the intention of the parties is clearly expressed. (*Shepard* agt. *Shepard*, 7 *Johns. Ch'y*

*Rep.* 57 ; *Wallingford* agt. *Allen,* 10 *Peters' U. S. C. R.*
583 ; *Simmons* agt. *McElwain,* 26 *Barb. Rep.* 419 ; *Winans*
agt. *Peebles,* 31 *Barb. Rep.* 380.)

3. The uniform language of courts of equity, for upwards
of one hundred years, furnishes unmistakable evidence of
an unvarying principle of action, under which the defend-
ant has a right to have her title sustained in this court as
valid and effectual.

1. " In this court gifts between husband and wife have
often been supported, though the law does not allow the
property to pass." (*Per Lord Chancellor* HARDWICKE, *in
Lucas* agt. *Lucas,* 1 *Atk. R.* 271.)

2. " It appears to have been asserted that a husband
and wife could not after marriage, contract, for a bona fide
and valuable consideration, for a transfer of property from
the husband to the wife, or trustees for her. The doctrine
is not so either here or at law." (*Per Lord Chancellor* ELDON,
*in Arundel* agt. *Phipps,* 10 *Vesey R.* 148.)

3. " The court expects satisfactory evidence of an act
constituting a transfer of the property and sufficient trans-
mutation of possession." (*Per Sir* THOMAS PLUMER, *in
Walter* agt. *Hodge,* 2 *Swanst. R. p.* 112.)

4. " The deed was undoubtedly void at law, for the hus-
band cannot make a grant or conveyance directly to his
wife during coverture." * * " The consideration for the
deed to the wife was very meritorious. It was ' natural
affection, and to make a sure maintenance for the wife in
case she should survive her husband.' " * * " The deed
to the wife of certain lands being part and parcel of his
estate for and during her widowhood, was therefore no
more than a just and suitable provision, and one that a
court of equity can enforce consistently with the doctrine
of the cases." * * " I conclude, accordingly, that the
deed from the husband to the wife may and ought in this
case to be aided and enforced by this court." (*Per Chan-
cellor* KENT, *in Shepard* agt. *Shepard,* 7 *John. Chy. R.* 60, *&c.*)

5. " Agreements between husband and wife during coverture, for the transfer from him of property directly to the latter, are undoubtedly void at law. Equity examines with great caution before it will confirm them. But it does sustain them when a clear and satisfactory case is made out that the property is to be applied to the separate use of the wife. Where the consideration of the transfer is a separate interest of the wife, yielded up by her for the husband's benefit, or of their family ; or which has been appropriated by him to his uses. Where the husband is in a situation to make a gift of property to the wife, and distinctly separates it from the mass of his property for her use. Either case equity will sustain, though no trustee has been interposed to hold for the wife's use." (*Per* WAYNE, *J.*, *in Wallingford* agt. *Allen*, 10 *Peters' U. S. C. Rep.* 594.)

6. " It is well settled that a post-nuptial agreement between the husband and wife, by which property is set apart for her separate use, will be sustained in equity though void at law." (*Per Chancellor* WALWORTH, *in Garlick* agt. *Strong*, 3 *Paige R.* 452.)

7. " In equity, gifts to the separate use of a married woman, as well those presented by the husband in his lifetime as those given by third persons, with or without the intervention of trustees, expressly named, will be protected in cases where they have been made in good faith and the rights of creditors are not infringed." (*Per V. C.* McCOUN, *in Neufville* agt. *Thomson*, 3 *Edw. V. C. R.* 93.)

8. " Although a deed from a husband directly to his wife is void in law, yet where the conveyance of the husband is for the purpose of a making a suitable provision for the wife, equity will lend its aid to enforce the provision where the rights of creditors do not interfere." (*Per* PAIGE, *J.; in Strong* agt. *Skinner*, 4 *Barb. Rep.* 552.)

9. " It is true that the deed from the husband to his wife was void at law, for a husband cannot during covert-

ure make a grant or conveyance to his wife. But such a grant will be upheld in equity when it is necessary to prevent injustice." (*Per* HARRIS, *J.*, *in Simmons* agt. *McElrath*, 26 *Barb.* 422.)

10. " Equity has always upheld conveyances which were void at common law, where equity and justice demanded it. And this whether the estate conveyed were a legal or an equitable estate." (*Per* JOHNSON, *J.*, *in Winans* agt. *Peebles*, 31 *Barb. Rep.* 380.)

V. The " fourth defence" sets forth a good cause of action by way of counter-claim against the plaintiff, which is a perfect bar to the action.

1. The defendant wishing to have established her equitable estate in the premises in question, (which she has derived from her husband,) and to have the apparent claim of the plaintiff and his alleged legal estate (which he has derived from the same source) removed as an existing cloud upon her title, has a right to demand the interposition of a court of equity to shield her against the plaintiff's unjust action. (*Tisdale* agt. *Jones*, 38 *Barb. Rep.* 523.)

2. This being her right, it became her duty, when prosecuted by the plaintiff, to set up these matters by way of counter-claim in this action, (if she desired to invoke the equitable powers of the court,) and not to vex the plaintiff with a separate action. (*Hunt* agt. *Farmers' Loan & Trust Co.* 8 *How. P. Rep.* 416 ; *Foot* agt. *Sprague*, 12 *How. P. Rep.* 355 ; *Winfield* agt. *Bacon*, 24 *Barb. Rep.* 160.)

3. If there be any doubt as to the effectiveness of the " second defence " as a mere negation or avoidance of the plaintiff's cause of action, the facts there alleged, and the additional matters which constitute together this " fourth defence," being set forth affirmatively by way of counter-claim, fully established the defendant's right, not only to defeat the plaintiff's action, but also to have an affirmative judgment in her favor. (*Code, Sec.* 274, *Sub.* 2.)

1. See in this connection *supra*, " fourth point," subdivision 1, page

2. The plaintiff is a mere volunteer, having no meritorious ground for resisting the defendant's claim. His trust having expired and his estate having ceased, he has no rights which a court of equity is bound to respect.

3. The conveyance to the plaintiff does not purport or assume to convey the lands in question.

4. The husband never contemplated disturbing the defendant's title or possession by the general assignment to the plaintiff.

5. The husband never revoked, or attempted to revoke, or manifested any intention to revoke his own deliberate act in executing and delivering his deed of these lands to his wife.

4. Additional rules of law and equity, which are applicable to the case of the defendant, asking affirmative relief against the plaintiff, fortify the defendant's right to a judgment in her favor.

1. The plaintiff does not stand in the position of a bona fide purchaser, and cannot, as such, resist defendant's claim. (*Heath* agt. *Westervelt*, 2 *Sand. Rep.* 110 ; *Vanheusen* agt. *Radcliffe*, 17 *N. Y. Rep.* 580.)

2. The alleged conveyance to plaintiff by W. H. Brown of the lands in question, while he was out of possession thereof, was void by statute. (2 *Rev. Stats. p.* 691, *Sec.* 6. *Burhans* agt. *Burhans*, 2 *Barb. Chy. R.* 398.)

3. If the court should hesitate to uphold defendant's deed as an operative conveyance, they will (against the plaintiff claiming the legal title as assignee of W. H. Brown) still enforce and give effect to the contract of W. H. Brown contained in the " covenants of warranty and further assurance " expressed in the deed, and founded upon good considerations. (*Livingston* agt. *Livingston*, 2 *Johns. Chy. Rep.* 537.)

4. The husband having received full consideration for

the conveyance, both he and the plaintiff, as his alleged grantee, are estopped in equity from now claiming, adversely to the husband's deed and covenant, that such deed is void at law. (*Mount* agt. *Morton*, 20 *Barb. Rep.* 131 ; *Erwin* agt. *Downs*, 15 *N. Y. Rep.* 575.)

VI. The order made at special term sustaining the demurrer should be reversed, with costs of this appeal and of the demurrer ; and judgment should be ordered for the defendant upon the second, third, and fourth defences.

CHARLES M. DA COSTA, *attorney, and* N. DANE ELLINGWOOD, *counsel, for respondent.*

I. The matters so secondly set up in the answer of the defendant, do not constitute a sufficient legal claim to the premises in question in this suit; inasmuch, as the deed under which she claims (it being a deed from husband to wife) is void at law; nor do they constitute a sufficient equitable claim.

1. A married woman may take or hold property either in her own right, or as a *feme sole*, or as a beneficiary of a trust; but she can neither take, nor hold property, nor claim any interest therein, in any other way.

*a.* If she claims to hold property as a *feme sole*, it must be under the act of 1849, which in terms, expressly precludes any gift or grant from husband to wife ; or

*b.* If she claims as a beneficiary of a trust, it must, if such claim arose subsequent to the passage of the act of 1849, be under or by virtue of some *express* trust; all other trusts, except such as result by operation of law, being abolished.

2. In her answer, the defendant does not claim any interest in the land in question under an express trust; but sets up a claim to such land, under and by virtue of a deed to her from her husband, executed subsequently to the passage of the act of 1849.

It can not be assumed, that this court will exercise its equitable powers to sustain such a claim in contravention of an express statute.

II. The matters thirdly alleged in the said answer, set up a claim to lands, other than the land described in the complaint, and in which parties, other than those who are parties to the present suit, have or pretend to have some interest. Such matters cannot be regarded as responsive to the compaint, or as constituting any claim whatever, to the land in question in this cause.

III. The matters fourthly stated in the said answer, do not constitute a counter-claim, as is therein alleged. Such a claim can exist only in actions arising upon personal contracts or undertakings. (*See Code*, § 150.) Nor can such matters be regarded as constituting an equitable claim, adverse to the legal claim of the plaintiff (*see 1st point and the subdivisions of that point.*)

IV. If, however, an equitable claim could be set up, adverse to the express prohibition of the statute of 1849, the defendant in her answer has failed to make out, with sufficient particularity, a case for equitable relief. (*Field* agt. *Holbrook*, 6 *Duer*, 605.)

V. Besides, notwithstanding the close blending of legal and equitable actions under the provisions of the Code, a question of great doubt exists, whether in a *legal* action for the purpose of determining the title to lands under the statute, an *equitable* adverse claim can be set up by way of answer. It is clear, however, that if the defendant has an equitable claim, it might be set up by way of a cross suit. *Mayor, &c., of New York* agt. *Stuyvesant*, 17 *N. Y. Rep. p.* 34, 44.)

By the court, ROBERTSON, J. This action, even if only the same relief were sought in it, as was formerly given under the statute respecting the determination of claims to land (2 *R. S.* 313, § 3), would be subject to the same rules as all

other actions. (*Code*, § 449, *Hammond* agt. *Tillotson*, 18 *Barb. R.* 332 ; *Man* agt. *Provoost*, 3 *Abb. Rep.* 446.) The same defences to defeat the right to such relief might be set up by the defendant. Such statutory proceeding evidently included only the determination of legal titles, as the defendant was to be barred only from claiming an estate of inheritance or freehold in possession, reversion or remainder in the premises. It did not include the setting aside of a conveyance upon the ground of the grantor's incompetency, (*Bridges* agt. *Miller*, 2 *Duer Rep.* 683), or the rights of parties under a contract to convey. Were the action so limited and the right claimed by the defendant in her second and fourth defences purely equitable, they might possibly be insufficient as defences.

But the relief demanded in the complaint in addition to that given under the statutory proceeding is that the plaintiff's title may be quieted and adjudged free and clear from any right claimed by the defendant and other relief.

This includes the removal of the defendant's claim, whatever it may be, from interfering with the title. It is by no means clear that the right set up by the defendant is not practically as much a legal one as the plaintiff's. The language of the cases where deeds from a husband to a wife have been sustained in equity is by no means clear as to the mode in which the wife's rights are to be protected or enforced, unless by repelling hostile claimants whenever they commenced an attack in a suit at law by an injunction in equity. Nor does it seem to be settled whether a second deed from the husband, through the intervention of a third person, is necessary to complete the wife's title: at all events, the defendant has the same right to resist the attack of the present plaintiff upon her title, as if it were a legal one. He is neither a *bona fide* purchaser nor clothed with the rights of a creditor. He is only a voluntary trustee created by the defendant's hus-

band, and having no more rights than he would have had to interfere with the defendant's estate or interest. The defences made therefore were proper if they were sufficient in law. The complaint in this case, however, is defective, as one in an action to remove a cloud from the plaintiff's title, because it does not show the nature of the defendant's claim. (*Heywood* agt. *City of Buffalo*, 14 *N. Y. R.* 534.) Since the law will not interfere to prevent speculative injuries. (*Scott* agt. *Onderdonk*, 14 *N. Y. R.* 9.) If it had simply stated such claim to arise from a deed from the defendant's husband to her on the face of which their relation appeared, it would have been demurrable, as the defect, if any, appeared on its face. (*Cox* agt. *Clift*, 2 *N. Y. R.* 118 ; *Ward* agt. *Dewey*, 16 *N. Y. R.* 519 ; *Fleetwood* agt. *City of New York*, 2 *Sandf. R.* 475.) If such deed, although *prima facie* void at law, could be sustained by extrinsic facts, the plaintiff would be bound to deny their existence in order to make the defendant's claim void. This defect, however, cannot be taken advantage of as regards the counter-claim. (*Graham* agt. *Dunnigan*, 6 *Duer R.* 629.)

The first defence demurred to sets up that the defendant's husband when entirely free from embarrassment for the purpose of applying the same to the separate use of the defendant conveyed to her in fee simple a portion of the property set out in the complaint which is specifically described by deed duly acknowledged and recorded. It also alleges that he did so in performance of an agreement to that effect with the defendant, and in consideration of his love and affection for her, and for other meritorious, valuable and pecuniary considerations. It further alleges that such settlement was no more than a reasonable provision for the defendant, in view of the pecuniary circumstances of her husband, and was so meant by him. Also that he was a man of great wealth, and the defendant had released her dower in large tracts of land. There is no

allegation that the release of such dower formed any part of the consideration for such settlement or any part of the agreement on which it was made.

If such second defence is not sufficiently definite, or certain in furnishing the details of the agreement for the execution of the settlement or the pecuniary consideration of it, the remedy of the plaintiff is to move to make it so, until he does so, it is to be presumed he understands the entire nature of them, particularly on demurrer where he claims whatever they were, such settlement forms no bar to his recovery, which is the matter now to be determined.

The voidness at law of a deed directly from a husband to a wife, which is the highly artificial result of the technical theory of their being but one person (1 *Bl. Com.* 442,) does not interfere with equitable rights which may grow out of such an instrument, they being capable in equity of being considered two persons. (2 *Story Eq. Jur.* §§ 1368 *to* 7375.) Such result at common law could always be obviated by interposing a stranger to accept a deed from the husband and give one to the wife. That there was no policy of the law to be carried out by defeating a deed directly from the husband to the wife is evident from the harmlessness of a recital in a conveyance to a stranger by the husband that it was for the purpose of conveying to the wife. ' (*Lynch* agt. *Livingston,* 6 *N. Y. R.* 422.)

It has been indirectly suggested rather than seriously urged, that the statute of 1849 (*Sess. L.* 1849, 528, § 1), which empowers a married woman to take, hold, and convey as a *feme sole,* property derived from any one but her husband, may by implication deprive her of the right of acquiring any property or interests by the gift of her husband, although only to be enforced in equity. Whether it is intended to carry this doctrine so far as to deprive her

of any rights she might acquire as purchaser or creditor does not appear.

It would be sufficiently daring if it took away from all husbands, however wealthy, the right of making provisions for the support of their wives. The title of the statute is "An Act for the more effectual protection of the property of married women," (*N. Y. Sess. Laws*, 1848, *Ch.* 200) : not to restrict or limit their rights. The section in question gives a married woman the power of a *feme sole*, in certain cases from which gifts by their husbands are simply excluded.

The strange inference, that such a statute meant to take away the right of a husband to make, or a wife to receive from him, a provision for her support, needs no further argument to refute it, than the bare statement of the provision. (*Powers* agt. *Lester*, 17 *How. P. R.* 413.) But it is seriously argued that this court should not exert its powers in equity " to sustain a claim in contravention of an express statute." How a court can do so when it is only asked as a court of equity to protect the interest of a wife as a *cestui que trust*, or perhaps a ward in chancery, and not establish any powers in her as a *feme sole* over the subject of the trust, I am at a loss to perceive.

Another question, by no means novel, has been raised in this case, that any equity of the wife growing out of the facts stated in the second defence must be a trust, and as such, prohibited by the Revised Statutes respecting uses and trusts, (2 *R. S.* 727, § 45,) because not enumerated therein. One of such provisions (§ 50) expressly declares that the preceding sections shall not apply to *trusts* arising " by *implication of law*," and the next section prohibits a resulting trust in a particular case. The 54th section of the same statute protects the rights of an innocent purchaser for a valuable consideration against an *implied* or resulting trust. Thus in the strongest manner recognizing

and upholding implied trusts. (*Johnson* agt. *Fleet*, 14 *Wen. R.* 179.)

Nothing, therefore, remains to be considered except what rights a wife derives by a settlement made by a husband upon her, in consideration partly of his affection for her, and partly of pecuniary considerations, although by an imperfect instrument, but executed with intent to carry out a previous post-nuptial agreement. The intervention of a stranger as a party to be contracted with, in order to sustain a wife's rights as her trustee, is not necessary in equity, which would thereby become as rigid and technical as the common law. (2 *Story Eq. Jur.* § 1380, *Wallingford* agt. *Allen*, 10 *Peters' U. S. R.* 583.) Nor is any antenuptial agreement indispensible as a consideration. (*Shepard* agt. *Shepard*, 7 *John. C. R.* 60 ; *Garlick* agt. *Strong*, 3 *Paige, Rep.* 452 ; *Neufville* agt. *Thomson*, 3 *Edw. V. C. R.* 93 ; *Strong* agt. *Skinner*, 4 *Barb. R.* 552 ; *Simmons* agt. *McElwain*, 26 *Barb. Rep.* 417.) The language of the authorities is, that, in a proper case, (*Shepard* agt. *Shepard, ubi supra*,) where the consideration was meritorious or to prevent injustice, or where equity demands it, (*Simmons* agt. *McElwain, ubi supra, and Winans* agt. *Peebles*, 31 *Barb. R.* 380,) where the rights of creditors do not intervene, mere affection and a desire to provide for the wife suitably, according to the husband's means, are sufficient to sustain it. (*Shephard* agt. *Shephard, Wallingford* agt. *Allen, Garlock* agt. *Strong ubi sup.*) Some valuable consideration proceeding from the wife on the faith of such promised settlement seems to be necessary where creditors intervene. (*Wickes* agt. *Clark*, 3 *Edw. V. C. R.* 58.) The same rule prevails in favor of the husband. (*Livingston* agt. *Livingston*, 2 *J. Ch. Rep.* 537 ; *Jaques* agt. *Metho. Epis. Ch.* 17 *John. Rep.* 548.)

In this case it is alleged in the second defence, that the conveyance was made to the defendant in pursuance of a previous agreement, for both a good and valuable consid-

eration, and. that it was a suitable one, having regard to the property of the husband; this is admitted by the demurrer, and equity will therefore sustain such a settlement, even if the plaintiff was a creditor or could claim a creditors rights. An agreement to release dower may be such a sufficient valuable consideration to sustain it, even as against creditors, as I have had occasion to hold recently at special term (*Manhattan Company* agt. *Slate, et al. MS.*); but it is not set forth to have been one in this case. The allegation of releasing dower is entirely isolated, is not connected with, nor does it refer to any other, and might be stricken out without prejudice.

The order appealed from, therefore, in so far as it sustains the demurrer to the second defence, is erroneous.

As the same matters are set up as a basis of equitable relief in the fourth defence, by way of a counter-claim, and relate to the land or the defendant's claim thereto, as the subject of the action, such counter-claim sets forth a good cause of action to prevent the plaintiff from embarrassing the defendant's equity with his legal conveyance. (*Tisdale* agt. *Jones*, 38 *Barb. R.* 523.) The fact that the plaintiff's action is a substitute for a former special proceeding (if it be so exclusively, and not one to remove a cloud upon the title), does not deprive the defendant of the right granted by the Code (§ 150) of setting up equitable defences in any kind of actions. (*Crary* agt. *Goodman*, 12 *N. Y. R.* 266; *Philips* agt. *Gorham*, 17 *N. Y. R.* 270.)

The demurrer to this defence is also not well taken.

The third defence presents simply the question, whether a trustee, after the purposes of his trust have been accomplished, retains any interest in land conveyed to him to enable him to litigate the claims of others?

A great many allegations unnecessary to raise that question, are contained in this defence: such as the priority in time of the conveyance to the defendant, to the accruing of any claims of any creditor of her husband represented

by the plaintiff; the barring of many debts of his by the statute of limitations, and the like.

The important allegation is contained in it, that the plaintiff has in his hands more than sufficient money, proceeds of sales by him of part of the assigned property, to satisfy all the *legal, subsisting, and outstanding debts of the assignor*. If it clearly appeared by such defence, that such debts did not include those barred by the statute of limitations, it would be insufficient, since the plaintiff's trusts do not cease by the running of the statute against such debts. But it does not; the allegation of the running of such statute is mere surplusage, and might be stricken out without prejudice. The language of the statute is clear and peremptory, that the estate of the trustees of an express trust shall cease when the purposes for which such trust has been created shall cease. (1 *R. S.* 730, § 67.)

A trustee therefore only takes so much of the entire legal ownership of the land as is necessary to carry out the trusts. His interest is contingent, and leaves the general ownership to remain with his grantor and his heirs or assignees. A reconveyance after the trusts are fulfilled is unnecessary. The property reverts to the owner, or rather becomes divested of the incumbrance of the trusts, as in case of a mortgage paid. This defence, therefore, amounts to a denial of title in the plaintiff, which is sufficient. (*Harrison* agt. *McIntosh*, 1 *J. R.* 384 ; *Bloom* agt. *Burdick*, 1 *Hill R.* 130.) The order appealed from was therefore erroneous in sustaining the demurrer to the third defence.

The order appealed from must therefore be so modified as to give judgment for the defendant against the plaintiff as to the property specified in the second and fourth defences upon the issues made by the former, and the counterclaim contained in the latter, and as to the plaintiff's whole cause of action upon the third defence, instead of judgment for the plaintiff upon the demurrer, with liberty to the

plaintiff to withdraw his demurrer, and reply in twenty days to those defences upon paying the costs of such demurrer at special term.